IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANTHONY PAYNE**<br><br>**v.**<br><br>**WOODS SERVICES, INC., WOODS SERVICES MEDICAL PRACTICE GROUP, LLC, ABRAHAM KAMARA, and JOHN DOES 1-5 AND 6-10** | **CIVIL ACTION**<br><br>**NO. 20-4651** |

<u>**MEMORANDUM RE MOTION TO DISMISS**</u>

**Baylson, J.**                                                                                          **February 16, 2021**

## I.     Introduction

Plaintiff Anthony Payne brings this case against his employer after having been fired for refusing to return to work.  At the time, Payne was under instructions to remain in quarantine after testing positive for COVID-19.  Defendants filed the present Motion to Dismiss, seeking dismissal of Payne's Complaint in its entirety.  For the reasons that follow, Defendants' Motion will be granted in part, and denied in part.

## II.     Facts and Procedural History

Based on the allegations in Plaintiff Anthony Payne's First Amended Complaint (ECF 5, Compl.) which this Court must accept as true for purposes of Defendants' Motion to Dismiss, the relevant facts are as follows.  Defendants Woods Services, Inc. and Woods Services Medical Practice Group, LLC are "corporation[s] providing integrated health care services and advocacy for children and adults with disabilities."  Compl. ¶ 6–7.  Abraham Kamara was employed as a Residential Director by Woods Services.  Compl. ¶ 9.  John Does 1-5 and 6-10 "are individuals and/or entities who, on the basis of their direct acts or on the basis of respondeat superior, are

answerable to the plaintiff in this matter."  Compl. ¶ 10.  Plaintiff Anthony Payne was employed

as a Residential Counselor by Defendants at their Langhore, PA facility.  Compl. ¶ 11.

On April 1, 2020, six patients at the Langhorne facility, all of whom Plaintiff had worked

with directly, tested positive for COVID-19.  Compl. ¶ 14–15.  Plaintiff discussed this exposure

with his doctor who advised him to get tested and quarantine for fourteen days.  Compl. ¶ 16.

Plaintiff notified Defendants of his doctor's advice.  Compl. ¶ 17.  On April 6, 2020, Plaintiff was

tested for COVID-19 at work, and the following day a nurse notified Plaintiff that he had tested

positive.  Compl. ¶ 18–19.  The nurse directed Plaintiff to quarantine for fourteen days.  Compl. ¶

19.  Six days later, on April 13, 2020, Kamara told Plaintiff he had been cleared and should return

to work.  Compl. ¶ 20.  Plaintiff responded that he could not return to work because he had not

completed his quarantine.  Compl. ¶ 21.  Kamara responded that if he did not return, his absence

would be considered a "call-out," and Plaintiff again reiterated the advice of the nurse and

referenced guidance from the Centers for Disease Control.  Compl. ¶ 22–23.  The following day,

Plaintiff did not return to work and Kamara fired him.  Compl. ¶ 24–25.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission

("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").  Compl. ¶ 4.  The

EEOC issued a "right to sue" notice on September 29, 2020.  Id.  On September 22, 2020, Plaintiff

filed this lawsuit.  See ECF 1.  His Amended Complaint alleges thirteen counts against Defendants:

1. **Count I**: Interference in violation of the Family and Medical Leave Act ("FMLA");

2. **Count II**: Retaliation in violation of the FMLA;

3. **Count III**: Interference in violation of the Families First Coronavirus Response Act ("FFCRA");

4. **Count IV**: Retaliation in violation of the FFCRA;

5. **Count V**: Retaliation in violation of the Pennsylvania Whistleblower Law ("PWL");

6. **Count VI**: Discrimination in violation of the Americans with Disabilities Act ("ADA");

7. **Count VII**: Discrimination based on Perception of Disability in violation of the ADA;

8. **Count VIII**: Retaliation in violation of the ADA;

9. **Count IX**: Disability Discrimination in violation of the Pennsylvania Human Relations Act ("PHRA");

10. **Count X**: Discrimination based on Perception of Disability in violation of the PHRA;

11. **Count XI**: Retaliation in violation of the PHRA;

12. **Count XII**: Aiding and Abetting as to Defendant Kamara in violation of the PHRA; and

13. **Count XIII**: Request for Equitable Relief.[1]

On November 25, 2020, Defendants filed the present Motion to Dismiss seeking to dismiss Plaintiff's Complaint in its entirety with prejudice.  ECF 9, Def. Mot.  Plaintiff responded on December 14, 2020.  ECF 10, Opp'n.  Defendants filed a Reply on December 22, 2020.  ECF 11, Reply.  Plaintiff filed a Motion for Leave to File a Sur-Reply on December 23, 2020.  ECF 12.

III. **Legal Standard**

Dismissal under Rule 12(b)(6) is appropriate when a plaintiff has "fail[ed] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quotation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Factual allegations must be "enough to raise a right to relief above the speculative level," and a "complaint

---

[1] The Court notes that this is not a claim for a relief but is a request for various equitable remedies.  It is not addressed in Defendants' Motion and the Court will not address it here.

may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that

a recovery is very remote and unlikely." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56

(2007).

"The tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678; see also Bell

Atl. Corp., 550 U.S. at 555 ("a plaintiff's obligation to provide the grounds of his entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do").  It is the defendant's burden to show that a complaint fails to state a

claim.  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

IV.    **Discussion**

a.  **FMLA**

Plaintiff brings an interference and a retaliation claim under the FMLA.  To succeed on an

FMLA interference claim, a plaintiff must establish that:

> (1) he or she was an eligible employee under the FMLA; (2) the
> defendant was an employer subject to the FMLA's requirements; (3)
> the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice
> to the defendant of his or her intention to take FMLA leave; and (5)
> the plaintiff was denied benefits to which he or she was entitled
> under the FMLA.

Capps v. Mondelez Global, LLC, 847 F.3d 144, 155 (3d Cir. 2017) (quotation omitted).  Under

the first prong of this test, to demonstrate that one is an eligible employee, a plaintiff must show

that he was entitled to leave "[b]ecause of a serious health condition that makes the employee

unable to perform the functions of [his] position."  29 U.S.C. § 2612(a)(1)(D).  In this context, a

"serious health condition" is defined as "an illness, injury, impairment or physical or mental

condition that involves inpatient care as defined in § 825.114 or continuing treatment by a health

care provider as defined in § 825.115." 29 C.F.R. § 825.113(a). "A regimen of continuing treatment that includes the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave." 29 C.F.R. § 825.113(c) (emphasis added).

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) [he] invoked [his] right to FMLA-qualifying leave, (2) [he] suffered an adverse employment decision, and (3) the adverse action was causally related to [his] invocation of rights." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301–302 (3d Cir. 2012). In Isley v. Aker Phila. Shipyard, Inc., Judge McHugh noted that "[w]hether entitlement to FMLA leave is actually an element of a retaliation claim appears to be an open question of law." 275 F. Supp. 3d 620, 634 (E.D. Pa. 2017).

When "giving notice of the need for FMLA leave," an employee must "state a qualifying reason for the needed leave." 29 C.F.R. § 825.301. Such notice must "allow the employer to determine whether the leave qualifies under the Act." Id. "In any circumstance where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee or the spokesperson to ascertain whether leave is potentially FMLA-qualifying." Id. An employer may require the employee to provide a certification issued by a health care provider. 29 U.S.C. § 2613(a).

Defendants argue that Plaintiff's failure to allege a serious health condition is fatal to both his interference and retaliation claims under the FMLA. Plaintiff argues that Defendants were required to provide Plaintiff notice of the deficiency in his request for leave, and allow him an opportunity to cure that deficiency. He argues that their failure to do so makes it inappropriate to dismiss his claims at this stage.

In Hansler v. Lehigh Valley Hosp. Network, 798 F.3d 149 (3d Cir. 2015), the Third Circuit discussed the process for allowing an employee to cure a certification from a health care provider when the submitted certification "is vague, ambiguous, or non-responsive (or incomplete[)]." Id. at 155. The District Court had denied the plaintiff's claims of interference and retaliation under the FMLA, finding that the certification provided by the plaintiff was not vague, but actually demonstrated that the plaintiff was not eligible for leave. Id. at 154. The Third Circuit reversed and held that the plaintiff was entitled to "cure" her certification. Id. In doing so, the Court noted that the plaintiff had "allege[d] she attempted to invoke her right to leave, she was not advised of deficiencies in her medical certification, she was not provided a cure period, and she was fired a few weeks later as a result of her leave request." Id. at 159. The Third Circuit found these allegations were sufficient to find that the plaintiff "might be able to show that [the defendant] had a retaliatory motive and that the stated reason for termination was pretextual." Id. The circumstances in Hansler were slightly different than in this case, as Defendants note, because the Court was considering the ambiguity of a health care provider's certification. However, the Third Circuit relied on the implementing regulations of the FMLA and noted that they "govern how employers are to respond to perceived deficiencies in employee notices generally, and in medical certifications in particular." Id. at 153 (emphasis added). Thus, based on the FMLA regulations, the reasoning in Hansler applies here even though there was no request for a medical certification, only a request from Plaintiff for leave.

Following the reasoning in Hansler, the Court finds that dismissal of Plaintiff's FMLA interference and retaliation claims at this stage would be improper. As in Hansler, Plaintiff has alleged a request for leave. Defendants did not provide an explanation of any deficiencies in Plaintiff's request, or allow an opportunity to cure any such deficiencies, as the FMLA regulations

require.  Plaintiff was fired the day after his request.  Therefore, Plaintiff has adequately pled his

claims of interference and retaliation under the FMLA, and the Motion to Dismiss will be denied

with respect to Counts I and II.

> **b. FFCRA**

The FFCRA includes both the Emergency Family and Medical Leave Expansion Act

("EFMLEA") and the Emergency Paid Sick Leave Act ("EPSLA").  See Pub. L. No. 116-127, 134

Stat. 178 (Mar. 18, 2020) ("FFCRA").  The ESPLA requires covered employers to provide paid

sick leave to employees who meet one of the following conditions:

> (1) The employee is subject to a Federal, State, or local quarantine
> or isolation order related to COVID-19.
>
> (2) The employee has been advised by a health care provider to self-
> quarantine due to concerns related to COVID-19.
>
> (3) The employee is experiencing symptoms of COVID-19 and
> seeking a medical diagnosis.
>
> (4) The employee is caring for an individual who is subject to an
> order as described in subparagraph (1) or has been advised as
> described in paragraph (2).
>
> (5) The employee is caring for a son or daughter of such employee
> if the school or place of care of the son or daughter has been closed,
> or the child care provider of such son or daughter is unavailable, due
> to COVID-19 precautions.
>
> (6) The employee is experiencing any other substantially similar
> condition specified by the Secretary of Health and Human Services
> in consultation with the Secretary of the Treasury and the Secretary
> of Labor.

FFCRA § 5102.  However, there is an exception for "an employee who is a health care provider

or an emergency responder."  Id.  The FFCRA specifies that "health care provider" has the same

definition as in the FMLA.  FFCRA § 5110 (citing 29 U.S.C. § 2611).  The FMLA defines "health

care provider" as: "(A) a doctor of medicine or osteopathy who is authorized to practice medicine

or surgery (as appropriate) by the State in which the doctor practices; or (B) any other person

determined by the Secretary to be capable of providing health care services."  29 U.S.C. § 2611.

The FFCRA also includes a provision which allows the Secretary of Labor to issue

regulations "to exclude certain health care providers and emergency responders from the definition

of employee under section 5110(1) including by allowing the employer of such health care

providers and emergency responders to opt out."  FFCRA § 5111.  Pursuant to this portion of the

law, the Department of Labor issued a Final Rule in April 2020 which defines "health care

provider" for the purposes of the FFCRA as follows:

> anyone employed at any doctor's office, hospital, health care center,
> clinic, post-secondary educational institution offering health care
> instruction, medical school, local health department or agency,
> nursing facility, retirement facility, nursing home, home health care
> provider, any facility that performs laboratory or medical testing,
> pharmacy, or any similar institution, Employer, or entity. This
> includes any permanent or temporary institution, facility, location,
> or site where medical services are provided that are similar to such
> institutions,

85 Fed. Reg. 19,326, 19,351 (§ 826.25) (Apr. 6, 2020) ("April Rule").

On August 3, 2020, Judge Oetken of the Southern District of New York struck down this

definition in a challenge brought by the State of New York under the Administrative Procedure

Act, finding that it was not consistent with the FFCRA.  See New York v. United States Dep't of

Labor, 477 F. Supp. 3d 1, 15 (S.D.N.Y. 2020).  Thereafter, the Department of Labor revised the

definition of health care provider, and the new Rule took effect on September 16, 2020.  See 29

C.F.R. § 826.30 ("September Rule").

The parties dispute which definition of "health care provider" applies, and as a result,

whether Plaintiff is excluded from bringing claims under the ESPLA.  Defendants argue that the

definition in the April Rule applies because it was in effect at the time Plaintiff was fired.  They

argue that Plaintiff falls within this definition and is therefore exempt from the ESPLA.  In the alternative, Defendants argue that Plaintiff also meets the definition in the September Rule. Plaintiff argues that the Court must apply the definition in the FFCRA because the April Rule was invalidated, and the September Rule was not in place at the time of his firing and is not retroactive.

The Court agrees that the definition of "health care provider" in the FFCRA is the appropriate definition to apply here.  Judge Oetken provided a detailed analysis of why the definition in the April Rule was "unambiguously forclose[d]" by the text of the FFCRA.  New York, 477 F. Supp. 3d at 13.  In doing so, the Court explained that the definition in the April Rule "hinges entirely on the identity of the employer" and "includes employees whose roles bear no nexus whatsoever to the provision of healthcare services, except the identity of their employers, and who are not even arguably necessary or relevant to the healthcare system's vitality."  Id. at 14–15.  The Department of Labor conceded that even "an English professor, librarian, or cafeteria manager at a university with a medical school would all be 'health care providers' under the Rule." Id. at 14.

That the April Rule was in place at the time of Plaintiff's firing is irrelevant when the Rule itself was not lawfully promulgated.  The Court further agrees that because the September Rule was not yet in effect at the time of Plaintiff's firing, and it does not have a retroactive application, the definition in the FFCRA itself is the one that the Court should apply.  That definition includes: "(A) a doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the State in which the doctor practices; or (B) any other person determined by the Secretary to be capable of providing health care services."  29 U.S.C. § 2611.  "Any other person capable of providing health care services" includes only specific professions such as podiatrists, dentists, and nurse practitioners.  29 C.F.R. § 825.125.  As a "Residential Counselor," Plaintiff

does not meet this definition.  He is not a "health care provider" and therefore is not exempt from the provisions of the FFCRA.  The Motion to Dismiss Counts III and IV will be denied.

### c. PWL

The PWL provides that:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

43 P.S. § 1423.  Defendants make three arguments regarding Plaintiff's claim under the PWL: (1) that they are not a "public body," (2) that Plaintiff has not adequately pled wrongdoing, and (3) that Plaintiff has not adequately pled waste.

The PWL definition of "public body" includes "[a]ny other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body."  43 P.S. § 1422.  Defendants argue that they are not a "public body" and therefore not subject to the PWL. They argue that receiving Medicare and Medicaid payments is not sufficient for an organization to meet the definition of "public body."  Plaintiff argues that whether Defendants are a public body is an issue of fact which they should be permitted to explore through discovery regarding Defendants' funding sources.  Plaintiff notes that his Complaint does not include reference to Medicare and Medicaid funding, but if there is evidence that Defendants receive Medicare and Medicaid funding, it would support a finding that Defendants are a public body.

On this subject, Plaintiff's Complaint includes the following allegation:

10

> As entities funded by the Commonwealth of Pennsylvania and/or its subdivisions, Defendants WSI and WSMP (collectively, the "Woods Defendants") are "public bodies" such that their employees are protected by the PWL. See Riggio v. Burns, 711 A.2d 497, 500 (Pa. Super. 1998) (en banc) (receipt of government funds made hospital a "public body" under the PA Whistleblower Law).

Compl. ¶ 8. The Court need not resolve whether receipt of Medicare and Medicaid payments is sufficient to consider Defendants a "public body," because Plaintiff has not alleged as much. Plaintiff has only alleged the legal conclusion that Defendants are a "public body" and provided no further supporting facts. See Westawski v. Merck & Co., No. 14-3239, 2015 WL 463949, at *11 (E.D. Pa. Feb. 4, 2015) (Beetlestone, J.) (dismissing claim where complaint merely stated, "Defendant [] qualifies as a 'public employer' for purposes of the Pennsylvania Whistleblower Act because Defendant receives a substantial amount of public funds, both state and federal"). Therefore, Plaintiff's Count V will be dismissed without prejudice. As Plaintiff's claim fails on the issue of whether he properly alleged that Defendants are a "public body," the Court need not address Defendants' arguments regarding wrongdoing and waste.

### d. ADA

#### i. Disability Discrimination

"To establish a prima facie case of discrimination, a plaintiff must show (1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination." Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010). An individual is disabled if he has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff's Complaint includes Counts alleging "disability discrimination" and "perception of

11

disability" discrimination, but because the present Motion and Response discuss all three definitions of disability, the Court will do so as well.

In 2008, Congress amended the ADA and "expanded the statute's non-exhaustive list of 'major life activities' and declared that the definition of disability shall be construed in favor of broad coverage of individuals under [the] Act, to the maximum extent permitted by the terms of [the] Act." Mills v. Temple Univ., 869 F. Supp. 2d 609, 620 (E.D. Pa. 2012) (Yohn, J.) (quotation omitted). A "record of" claim of discrimination requires a plaintiff to prove that he has a "history of, or had been misclassified as having, an impairment that substantially limited a major life activity." Eshelman v. Agere Sys., 554 F.3d 426, 437 (3d Cir. 2009) (quotation omitted).

"An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). "To adequately plead that an employer 'regarded' an employee as having a qualifying disability, the plaintiff must allege (1) that the employer believed that a wholly unimpaired plaintiff had an impairment that substantially limited at least one major life activity, or (2) that the employer believed an employee's actual impairment to limit major life activities when it in fact did not." Kurylo v. Parkhouse Nursing & Rehab. Ctr., L.P., No. 17-4, 2017 WL 1208065, at *5 (E.D. Pa. April 3, 2017) (O'Neill, J.).

The prohibition against "regarded as" discrimination does "not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B). Because it is a defense, "it is the [defendant's] burden to demonstrate that the impairment would be both transitory and minor."

12

Cook v. City of Phila., 94 F. Supp. 3d 640, 645 n.4 (E.D. Pa. 2015) (Kearney, J.). In Cook, the Court explained that it was inappropriate to grant a Motion to Dismiss when there was "nothing on the face of the complaint to indicate that [the plaintiff's] 'regarded as' disability [was] 'transitory and minor.'" Id.

Defendants argue that Plaintiff has not alleged that his COVID-19 diagnosis limited any major life activities, that he had a history of disability, or that he had any limitation that went beyond being transitory and minor. Plaintiff argues that when Congress amended the ADA, it made clear that the definition of disability should be interpreted broadly. Based on the expanded interpretation of disability he argues that he meets all three definitions of disability, especially at this early stage. Plaintiff argues that whether his disability is "transitory and minor" is a defense and cannot be proven on the facts alleged in the Complaint.

On this subject, Plaintiff has alleged that:

> As a result of his COVID-19 diagnosis, Plaintiff was disabled within the meaning of the ADA and/or PHRA.
>
> In the alternative, Plaintiff was perceived as disabled by the defendants and/or the defendants held perceptions of, or regarding, Plaintiff's disability and/or his continued utility as an employee.

Compl. ¶ 26–27. These allegations are "[t]hreadbare recitals of the elements of [the] cause of action and need not be accepted as true for purposes of this Motion. Ashcroft, 556 U.S. at 678. Plaintiff has not alleged any facts regarding his symptoms or impairments as a result of his COVID-19 diagnosis, and has not alleged what "major life activity" or activities he was unable to perform as a result. While Plaintiff is correct that, given the lack of details regarding his disability in the Complaint, the Court could not determine whether his diagnosis is transitory and minor, he has not sufficiently alleged facts supporting the conclusion that he was "regarded as" disabled. Plaintiff has not alleged any facts related to his employer perceiving him as disabled. If anything,

the facts in the Complaint suggest that his employer did not consider him to be disabled, as they requested that he return to work. Therefore, Count VI and VII will be dismissed without prejudice.

### ii.   Retaliation

"To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). "[U]nlike a general ADA discrimination claim, an ADA retaliation claim does not require that the plaintiff demonstrate a disability within the meaning of the ADA, but only that the plaintiff ha[d] a reasonable, good faith belief that he was entitled to request the reasonable accommodation he requested." Sulima, 602 F.3d at 188 (quotation omitted). "Protected activity" under the ADA "includes retaliation against an employee for requesting an accommodation." Id. at 188–89.

"FMLA leave is not a reasonable accommodation." Rutt v. City of Reading, No. 13-4559, 2014 WL 5390428, at *4 (E.D. Pa. Oct. 21, 2014) (Stengel, J.). However, "the ADA can complement FMLA leave.  The ADA may require employers to make reasonable accommodations to employees returning from FMLA leave." Id. at *5 (quoting 29 C.F.R. § 825.702(d)).  In Rutt, the plaintiff "allege[d] that she requested a light duty assignment." Id.  "According to the complaint, defendants denied her requests without engaging in the interactive process." Id.  The Court found that these allegations were sufficient to allege a failure to consider a reasonable accommodation.

Defendants argue that Plaintiff has not adequately alleged protected activity because he alleges the same facts to support his FMLA and ADA claims.  Plaintiff argues that Defendants

14

"failed to engage in any interactive process as required when an employee puts an employer on notice of a medical condition that may require accommodation." Opp'n 23.

Here, Plaintiff has not alleged any facts which allow the Court to find that he made a request for a reasonable accommodation separate from his request for FMLA leave. He alleges the exact same facts in support of both claims. There is only one "request" alleged and that is to finish the remainder of his quarantine. There is nothing in his Complaint to suggest that his ADA request was a complement to his FMLA request. Plaintiff was not entitled to engage in an "iterative process" with his employer, because he did not actually request an accommodation. Therefore, Count VIII will be dismissed without prejudice.

### e. PHRA

#### i. Disability Discrimination and Retaliation

Many Courts have stated that "[t]he PHRA [was] basically the same as the ADA in relevant respects." Rinehimer v. Cemcolift, 292 F.3d 375, 382 (3d Cir. 2002) (quotation omitted). However, after the ADA was amended, "[t]he majority of courts in the Eastern District of Pennsylvania have concluded that because the Pennsylvania legislature has not enacted a similar amendment to the PHRA, the disability prong of discrimination analysis under the PHRA should be analyzed in the same manner as pre-ADAAA claims." Gardner v. SEPTA, 410 F. Supp. 3d 723, 734 n. 5 (E.D. Pa. 2019) (Kenney, J.).

Under the original, more stringent definition, "[a] nonpermanent or temporary condition cannot be a substantial impairment under the ADA." Sulima, 602 F.3d at 185. As explained above, Plaintiff has not alleged any facts regarding the seriousness of his disability. Further, if he cannot meet the definition of disability under the modified, broader definition in the ADA, he cannot meet the stricter definition under the PHRA. Therefore, Counts IX and X will be dismissed

without prejudice.  The amendments to the ADA are not relevant to Plaintiff's retaliation claim.

Plaintiff's PHRA retaliation claim is coextensive with his ADA retaliation claim and therefore

Count XI will be dismissed without prejudice for the reasons explained above.

### ii.  Aiding and Abetting

Under the PHRA, it is unlawful

> [f]or any person, employer, employment agency, labor organization
> or employe, to aid, abet, incite, compel or coerce the doing of any
> act declared by this section to be an unlawful discriminatory
> practice, or to obstruct or prevent any person from complying with
> the provisions of this act or any order issued thereunder, or to
> attempt, directly or indirectly, to commit any act declared by this
> section to be an unlawful discriminatory practice.

"Although the PHRA permits claims against individuals for aiding or abetting an unlawful

discriminatory practice, see 43 Pa. Stat. Ann. § 955(e), individual employees cannot be held liable

if the employer is not liable for a discriminatory practice." Deans v. Kennedy House, Inc., 998 F.

Supp. 2d 393, 414 n.20 (E.D. Pa. 2014) (Robreno, J).

As explained above, Plaintiff has not alleged sufficient facts to proceed with his

discrimination and retaliation claims under the PHRA.  Therefore, he has not alleged an underlying

violation of the PHRA as required for his aiding and abetting claim to proceed.  Count XII will

also be dismissed without prejudice.

## V.    Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss will be granted in part, and

denied in part. In addition, Plaintiff's Motion for Leave to File a Sur-Reply will be granted.  An

appropriate Order follows.

/Volumes/Judge Baylson/CIVIL 20/20-4651 Payne v Woods Services/20-4651 Memorandum re Motion to Dismiss.docx